UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAVID SCHMIDT,<br><br>          Plaintiff,<br><br>vs.<br><br>C.R. BARD, INC., *et al.*,<br><br>          Defendants. | 2:11-CV-00978-PMP-PAL<br><br>**<u>ORDER</u>** |

On April 18, 2007, Plaintiff David Schmidt underwent laparoscopic bilateral hernia repair surgery during which a 3DMax Mesh was inserted by surgeon Scott Gabriel, M.D. The 3DMax Mesh used to treat Schmidt is made of polypropylene, and is manufactured by Defendants C.R. Bard, Inc. and Davol, Inc. Although polypropylene mesh devices have been utilized in hernia surgery for many years, Schmidt experienced a rare and severe inflammatory reaction to the 3DMax Mesh device. Ultimately, the 3DMax Mesh was removed from Schmidt's groin in two surgeries. Thereafter, Schmidt filed the instant law suit alleging numerous product liability claims, essentially arguing that his injuries were caused by a defect in the 3DMax Mesh, and that Defendants failed to adequately warn regarding known risks of treatment.

By their Motion for Summary Judgment (Docs. #109, #110 & #114), Defendants contend that no genuine issue of material fact remains and that in accord with Rule 56 of

the Federal Rules of Civil Procedure, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's remaining claims for failure to warn, design defect, negligence, breach of implied warranty, and deceptive trade practices. A hearing was conducted on Defendant's Motion on April 25, 2013, following which the Parties filed supplemental briefs (Docs. #139 & #142).

Defendants argue Plaintiff's failure-to-warn claims are without merit because Defendant specifically warned of the potential for complications from inflamation and adhesions as well as the chronic pain which could result from utilization of the 3DMax Mesh. Defendants argue that the adequacy of their warnings is established as a matter of law because Plaintiff has offered no expert, or other evidence that the warnings provided were not adequate. Moreover, Defendants insist Plaintiff's failure-to-warn claim fails because Plaintiff has offered no evidence to show that any inadequate warnings caused Plaintiff's alleged injuries.

Defendants argue they are entitled to summary judgment on Plaintiff's design defect claim, because Plaintiff's designated expert offers no opinion on the design of the 3DMax Mesh, nor does Plaintiff's expert opine that the design of the Mesh renders it unreasonably dangerous. Additionally, Defendants assert that Plaintiff has offered no evidence that any change in design of the 3DMax Mesh would have prevented the injuries allegedly sustained by Plaintiff. Hence, any injuries claimed by Plaintiff could not be attributable to the particular design of the 3DMax Mesh in question.

Defendants argue they are entitled to summary judgment on Plaintiff's negligence and breach of implied warranty claims because Plaintiff has failed to offer evidence of a causal connection between Plaintiff's alleged injuries and any representation, warranty, or breach of duty by Defendants.

Finally, Defendants argue they are entitled to summary judgment on Plaintiff's deceptive trade practices claim under the Nevada Consumer Protection Act because

Defendants complied with all applicable governmental regulations, and also because Plaintiff and his surgeon admit that neither relied on any marketing, advertising, labeling, or other material from Defendants prior to Plaintiff's initial hernia repair surgery.

Plaintiff rejects each of Defendants' arguments above and contends he has marshaled substantial evidence to support all of his claims, and at a minimum, enough evidence to create at least genuine issues of material fact as to each of them.

As to Plaintiff's failure-to-warn claims, Plaintiff correctly states that manufactures who distribute products in Nevada are required to communicate to consumers the hazards associated with their products which are not genuinely known. *General Electric Co. v. Bush*, 88 Nev. 360, 365, 498 P.2d 366 (1972). However, the Court finds Plaintiff has failed to cite to evidence which that the warnings which accompanied the 3DMax Mesh surgically implanted in Plaintiff were inadequate. Even to the extent Plaintiff were permitted to rely on the unsworn expert report of Dr. Kevin Petersen, and it is not at all clear that he can do so, Dr. Petersen testified that he was not offering expert opinion regarding the adequacy of the warnings, and that he had never even reviewed the warnings that accompanied the 3DMax Mesh in question. Additionally, Plaintiff has offered no evidence that Dr. Gabriel, the surgeon who inserted the 3DMax Mesh into Plaintiff ever reviewed the warnings that accompanied the product. As a result, Plaintiff has failed to sustain his burden of showing the existence of genuine issues of material fact with respect to his failure-to-warn claim, and Defendants are entitled to summary judgment.

Plaintiff's design defect claim is similarly problematic. In his deposition testimony, Plaintiff's proposed medical expert, Dr. Petersen, concedes that he is not qualified to offer expert medical device design testimony. Neither does Plaintiff submit any evidence to show that the design of the 3DMax Mesh in question was the legal cause of the injuries alleged by Plaintiff. Neither is the Court swayed by Plaintiff's argument that the testimony of Dr. Petersen to the effect that Plaintiff's hernia repair could have been

3

accomplished without use of the 3DMax Mesh.  The fact that an alternative method of surgical hernia repair was potentially available does not supports Plaintiff' design defect claim.  As argued by Defendants, non-mesh repair is not an alternative design and does not meet Plaintiff's burden to support this particular claim.

The Court finds Plaintiff's claim for negligence must fail because Plaintiff has offered no sufficient evidence that the design of the 3DMax Mesh fell below the appropriate standard of care and further because Defendants have come forward with affirmative expert testimony that they acted as a reasonably prudent medical device manufacturer.

Plaintiff's implied warranty claim fails because Plaintiff has not presented evidence of proximate cause.  Indeed the evidence shows that Dr. Gabriel reviewed no warnings which accompanied the 3DMax Mesh product at all, and there is no evidence that Dr. Gabriel would have done anything differently had the warnings accompanying Defendants' product been different.

Lastly, Defendants' Deceptive Trade Practices Act claim fails because Plaintiff cannot prove justifiable reliance on any alleged deceptive or false representation on the part of Defendants.  In fact, the record supports Defendants' position that neither Dr. Gabriel nor Plaintiff relied on any marketing, advertising, labeling, or other materials from Defendants prior to the implant surgery.

Finally, for the reasons set forth by Defendant's in their Response to Plaintiff's Sur-reply (Doc. # 142), the arguments and evidence offered in Plaintiff's Sur-reply (Doc. # 139) do not alter the Court's conclusion that Defendant's are entitled to Summary Judgment on each of Plaintiff's remaining claims.

///
///
///

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 109, 110, & 114) is **GRANTED**, and that the Clerk of Court shall forthwith enter Judgment in favor of Defendant's and against Plaintiff.

**IT IS FURTHER ORDERED** that Defendant's Motion to Bifurcate Trial (Doc. # 100), is **DENIED.**

DATED: July 22, 2013.

_____
PHILIP M. PRO
United States District Judge